## Antolini v. Ambridge Borough

*George E. Baldwin, Jr.,* for plaintiff.
*Genevieve W. Settino,* for defendant.

REED, *J.,* May 18, 1976—This case is a suit in equity to compel the Borough of Ambridge to pay pension benefits allegedly due plaintiff. The facts, agreed to by both parties, are set forth below.

### FINDINGS OF FACT

1. Plaintiff is Carmen Antolini, who resides at 407 Elm Road, Ambridge, Pa.

2. Defendant, the Borough of Ambridge, is a municipal corporation located in the County of Beaver and Commonwealth of Pennsylvania.

3. Plaintiff was employed by defendant as a full-time service employe for a continuous period of 15 years.

4. On April 30, 1970, the Council of the Borough of Ambridge enacted Ordinance No. 877 establishing a service employe's pension fund. The ordinance contained, inter alia, the following provisions:

"SECTION 5. The Borough of Ambridge hereby prescribes a minimum period of total service not less than an aggregate of twenty (20) years in the Borough of Ambridge and shall fix the age of the members at sixty-five (65) years after which they must retire, Any member who has reached age 65 and did not complete 20 years of service, shall receive a reduced actuarial equivalent pension depending on the total number of years of service completed. A member must have a minimum of five (5) years of service in order to qualify for any pension benefits.

"SECTION 7. . . . The basis for determining any pension payable under this ordinance, following the retirement of any member meeting the service and age qualifications of this ordinance shall be as follows:

"Monthly pension or retirement benefits shall be one-half of the monthly average salary of such member during the last sixty months of employment and shall be payable to the member for as long as he lives and there shall be a minimum of 120 monthly payments guaranteed on that portion of such members pension as may be payable from this pension fund. Such pension or retirement

benefits for any month shall be computed as the sum of (1) any pension benefits received from the pension fund hereby established by this ordinance, (2) maximum primary benefits under the Federal Social Security laws for which the member may be eligible because of age or/and disability to the extent necessary to bring the total pension benefits in any month up to one-half of the aforesaid monthly average salary . . ."

5. Pursuant to Ordinance No. 877, the Council of the Borough of Ambridge, on November 19, 1970, promulgated a "Retirement and Insurance Plan" which incorporated, in substance, the above-quoted provisions of that ordinance.

6. Plaintiff became eligible for pension benefits under this "Plan" and retired on July 31, 1974, having completed 15 years of employment with the borough.

7. Plaintiff's total wages over the final five years or 60 months of his employment were $41,153.88 or an average of $685.90 per month.

8. Excluding overtime pay, plaintiff's wages over the same period of time were $31,163.96 or an average of $519.39 per month.

9. Upon his retirement, plaintiff became eligible for and began to receive Federal Social Security payments in the amount of $272 per month.

## DISCUSSION

These facts raise the following issues of law: (1) whether or not the term "salary" includes overtime pay; and (2) whether or not the term "reduced actuarial equivalent," as applied to employes who retire at age 65 without having served 20 years, requires a reduction of an employes' "average

monthly salary" or merely a reduction of the net pension benefit.

Under the formula contained in the ordinance and plan, one of the following computations would apply to plaintiff, depending on our determination of the first issue:

|  | Overtime Included | Overtime Excluded |
|---|---|---|
| 1. Monthly average salary (last 60 months) | $685.90 | $519.39 |
| 2. One-half thereof | 342.95 | 259.69 |
| 3. Subtract primary monthly Federal Social Security Benefits | 272.00 | 272.00 |
| 4. Net monthly pension based on 20 years service | 70.95 | — |

Assuming that overtime pay should be included in computing "monthly average salary" and that $685.90 is the proper figure upon which to base plaintiff's pension benefits, the second issue must then be resolved. Plaintiff completed 15 years of service, and thus the ratio used in computing the "reduced actuarial equivalent" of the benefits he would have received after 20 years of service is three-fourths. Defendant contends that this equivalent ratio should be applied to the "monthly average salary" itself. This procedure would reduce the figure from $685.90 to $514.42 per month, one-half of which is $257.21. Since plaintiff receives Social Security benefits of $272 per month, he would not be entitled to any pension from the Borough of Ambridge. Plaintiff contends that the figure to which the equivalent ratio should be applied is the net pension based on 20 years ser-

vice, which is $70.95 per month. The result would entitle plaintiff to receive a net pension from the borough, based on 15 years of service, of $53.26 per month.

We have concluded that a reasonable construction of the provisions in question requires a determination of both issues in favor of plaintiff. The appellate courts of this State have not previously decided the precise questions now before the court. However, we are guided initially by the following rule of construction, which is employed where the term "salary" is left undefined in pension or retirement laws:

" 'The connotation to be placed upon the term "salary" must depend upon the sense in which it is used and the purpose sought to be achieved. Here we are concerned with placing an interpretation upon it which "harmonizes with the spirit and purpose of the retirement acts": Kane v. Policemen's Fund et al., 336 Pa. 540, 546, 9 A.2d 739.' "

This language is found in Kelly v. Loveland, 141 Pa. Superior Ct. 455, 462, 15 A.2d 411 (1940).

That case concerned an ordinance, much like the one in the present case, which entitled qualified retired employes of the City of Wilkes-Barre to receive "fifty percentum of the amount which would constitute the average annual salary or wages . . . during the last five years of his or her employment . . ." as pension benefits. Plaintiff, a retired city treasurer, received a nominal salary and, in addition thereto, received specified commissions upon tax collections. The court affirmed the lower court judgment which held that the basis of plaintiff 's retirement pay should be his nominal salary plus net commissions. The court employed the following language:

"Basically, 'salary' is compensation for services rendered. As to this, there is complete accord. . . . In the case at bar, appellee, though he rendered important services and received substantial compensation, would be entitled to only nominal retirement pay, a result incompatible with the spirit and purpose of the ordinance. The fair and reasonable intendment of the term 'salary,' as used therein, is that it embraces *the entire compensation paid to the employee for the services rendered by him.*": 141 Pa. Superior Ct. at 463. (Emphasis supplied.)

Applying this language to Ordinance no. 877, we are convinced that the only fair interpretation of "average monthly salary" is one that includes compensation for overtime. Defendant argues that "salary" encompasses only that compensation which is incident to the position or within the original scope of activity for which the employe was hired. According to this argument, overtime work was not within the contemplation of the parties at the time plaintiff was hired. We do not agree with this reasoning. Ordinance no. 877 and the plan formulated pursuant thereto established a fund for service employes. The borough certainly had the knowledge and expectation, at the time plaintiff was hired, that service employes would often be required to work overtime in order for the borough to maintain vital services; for example, in the event of an emergency or an attack of severe weather. The fact that overtime pay accounted for one-fourth of plaintiff's total compensation over the final five years of his employment is important. Were it not for the expectation of overtime pay, he may have sought to obtain other sources of income. The borough could easily have placed the limitation it now seeks to impose on the term "sal-

ary" directly in the language of the ordinance and retirement plan. In view of the context and sense in which the term "salary" is used, it is only by placing an unwarranted and outmoded restriction on the language in Kelly v. Loveland, supra, that overtime pay may be excluded from "the entire compensation paid to the employee for services rendered by him." Therefore, the entire amount of wages earned by plaintiff over the last 60 months of employment is the basis of computing his "average monthly salary."

Defendant's position on the second issue also requires a strained interpretation of section 5 of the ordinance, and section 2 of the retirement plan. There is nothing in the language of these sections to suggest that the "average monthly salary" itself is subject to reduction. Members are to *"receive* a reduced actuarial equivalent pension" according to the ordinance. The plan adds the word "benefit" to this phrase. Clearly, reference is being made to the actual monthly payment to which a pensioner is entitled. Therefore, plaintiff is entitled to receive from the borough a monthly pension of $53.26 per month, which is the reduced actuarial equivalent of the benefits he would have received had he served 20 years.

## CONCLUSIONS OF LAW

1. Compensation for overtime work performed by plaintiff must be included in computing the average monthly salary of plaintiff, upon which is based plaintiffs pension benefit under ordinance no. 877 and the retirement plan formulated pursuant thereto.

2. Plaintiff is entitled to receive a reduced actuarial equivalent of the net pension benefit to which he would have been entitled had he worked 20 years.

148

## DECREE NISI

Now, May 18, 1976, it is hereby ordered and decreed that the Borough of Ambridge pay, or cause to be paid, to plaintiff herein the sum $53.26 per month as a pension payment under Ordinance no. 877 of the Borough of Ambridge and the Borough of Ambridge Pension Plan. This payment is to be made in accordance with the terms and conditions of the ordinance and pension plan as it is interpreted by this adjudication.

It is further ordered and directed that the Borough of Ambridge pay the sum of $53.26 per month from August 1, 1974, until the present date, together with interest at the rate of six percent per annum from August 1, 1974, until the present date.

The prothonotary shall give prompt notice of this decree nisi to the parties as required by Pa. R.C.P. 1517. Unless exceptions are filed within 20 days after notice of the filing of this adjudication, the decree nisi shall be entered by the prothonotary, upon praecipe, as the final decree, and he shall give prompt notice to the parties of the entry thereof as provided by Pa. R.C.P. 1519.